COLLIER WENDEROTH AND NANCY WENDEROTH *v.* JACK FREEZE, MAYOR OF THE CITY OF FT. SMITH ARK. ET AL

5-5188                                          452 S. W. 2d 328

Opinion delivered April 13, 1970

*Harper, Young & Smith,* for appellants.

*Shaw, Jones & Shaw* and *Jack Rose,* for appellant.

CARELTON HARRIS, Chief Justice. This is a zoning case. Collier Wenderoth and Nancy Wenderoth, appellants herein, own a home in Fort Smith which abuts a tract that the City of Fort Smith, on the application of Grand Investments, Inc., one of the appellees herein, rezoned from Open 1 (0-1) to Residential 3 (R-3). The tract of land rezoned is approximately 8.3 acres, and lies west and abutting to Interstate 540, between the streets Grand Avenue and Kinkaid Avenue. The purpose of Grand Investments in seeking the rezoning was to sell the tract of land owned by them to Henderson Corporation, Henderson proposing to build an apartment complex consisting of approximately 225 units. The petition for rezoning was filed with the Planning Commission of the City of Fort Smith, heard by the commission, and approved on April 8, 1969. Appellants were not present at that time, and this fact will be hereafter discussed. On April 21, 1969, the Board of Directors of the City of Fort Smith considered the petition for the requested rezoning, and Collier Wenderoth appeared before the board with his attorney in opposition thereto. However, the board approved the rezoning, and passed an ordinance to that effect. Thereafter, appellants instituted suit in the Sebastian County Chancery Court, seeking an injunction to prohibit the proposed zoning change. After the taking of evidence, the court found that the only abutting property owners complaining as to the rezoning were the petitioners; that they had notice of the hearings and were afforded an opportunity to be heard; that it had not been shown by appellants that the rezoning was unreasonable and arbitrary. The complaint was dismissed for want of equity, and from the decree so entered, appellants bring this appeal. For reversal, two points are asserted, first, "The lower court erred in holding that the action

of the Planning Commission and Board of Directors was not arbitrary." It is also contended that "The lower court erred in finding that the notice of public hearing was given in accordance with the ordinances of the City of Fort Smith, Arkansas.

We have held that the Chancellor should sustain the city's ruling unless he should find that it acted arbitrarily. *Olsen* v. *City of Little Rock,* 241 Ark. 155, 406 S. W. 2d 706. However, we agree with appellants that the action of the City Planning Commission, under the circumstances hereafter enumerated, was arbitrary, and resulted in a denial of appellants' rights.

The record reflects that the Wenderoths received notice by post card, dated March 18, that a hearing on the rezoning petition filed by Grand Investments, Inc., would be held by the Planning Commission on Monday, April 15, 1969. No objection to this date was raised by the Wenderoths, and as far as the record reflects, they apparently planned to be present to voice their opposition to the petition at that time. Another notice, postmarked March 28, was received by appellants, advising that the hearing would be held on April 8, 1969. According to the testimony, Mr. Wenderoth had previously arranged for dental surgery for his wife at Tulsa, Oklahoma, on that date, a gingivectomy operation having been arranged with a Doctor Hall of that city. Mr. Wenderoth's attorney was Thomas Harper of Fort Smith, and Mr. Harper was also committed for another meeting at that time. A partner of Harper, who, according to the evidence, was not familiar at that time with any of the facts upon which the Wenderoths based their protest to the rezoning, went to the Planning Commission meeting on April 8 to request a continuance of the hearing, the associate giving the reasons why the Wenderoths could not be present. Counsel for appellees objected to a continuance, and the chairman stated, "I think we will go ahead and hear the case and after Mr. Ledbetter finishes, I'll ask if there is any opposition. At that time you can get on the record what you want." The request for rezoning

was then presented and at the conclusion of the presentation, the chairman inquired if anybody desired to speak in opposition. Harper's associate counsel then stated:

"* * * I once again renew my request for continuance to permit Mr. Harper, Mr. Wenderoth and Mrs. Wenderoth if he should desire to present your objection to the granting of this zone change. I am not familiar, I have not talked to Mr. Wenderoth about this, and we let the opposition know, the opponents of this last weekend, what the complications were. I think in order to have the full and complete hearing these people should be heard and those matters taken up only after both sides have been presented."

After hearing some other cases, the chairman then asked if the commission desired to postpone or defer action for a month in order to give Mr. Wenderoth and Mr. Harper, his attorney, an opportunity to be heard. An unidentified member of the commission moved that this be done, and another member, identified as Dr. Shermer, stated:

"Well, I just want to say they knew this meeting was to be held today and they had ample time to prepare for it. I'm not one way or the other, but I don't think going to the doctor or going to a dentist is enough reason to excuse a man from being present in a meeting when he's known about it for a month."

When another unidentified member mentioned that Harper was in another meeting being held simultaneously, Shermer replied:

"Well, I knew, but I think he could have sent his representative because this meeting is just as important as that."

A vote was taken on whether to take action on the petition immediately, and six voted, "Aye;" three, against. The petition for the rezoning was approved,

and the recommendation made to the Board of Directors of the City of Fort Smith that same be granted. On April 21, the Board of Directors held its regular meeting, and the matter was presented for its approval. At that time, Mr. Wenderoth made a statement opposing the rezoning. A Mr. Mooney stated he had not been contacted, and that he would like to ascertain how rezoning would affect his property. He said that he bought his property under the assumption that "all of that would remain residential. Now, I am just making my point. I'm involved, all my savings are there and I don't believe that it is being done in a democratic way." After a motion was made to approve the rezoning ordinance, and the rules were suspended for a second and third reading, the ordinance was approved by a vote of five to one.

Appellees point out that appellants' counsel was given an opportunity to present objections to the proposed zoning at the meeting of the Planning Commission; that they were given a hearing at the meeting of the Board of Directors, and that again, in Chancery Court, appellants had an opportunity to present all of their evidence at a *de novo* trial. It is apparently the view of appellees that, since they (appellants) had the opportunity to present their case to the Board of Directors, and to the Chancery Court, the failure to have that opportunity before the City Planning Commission is really immaterial.

We cannot agree with this argument, and if it is sound, then there is no reason for a hearing to be held at all before the City Planning Commission. If a hearing is of no value, it can only be characterized as a waste of time for members of the commission, the petitioners, and the opponents. The general purpose of a Planning Commission is set out in Ark. Stat. Ann. § 19-2827 (Repl. 1968) as follows:

"The general purpose of the planning commission is to prepare or have prepared a plan or plans of the municipality, to receive and make recommendations on

public and private proposals for development, to pre-
pare and administer planning regulations, to prepare
and transmit to the legislative body recommended ordi-
nances implementing plans, and to advise and counsel
the city government and other public bodies. The
planning commission shall have the duty and function
of promoting public interest in and understanding of
the long-term coordinated municipal planning."[1]

The importance of a hearing before that body is
shown by the fact that Fort Smith has an ordinance,
No. 2639, requiring notice of any hearing of a change
or authorization in zoning to be published in a news-
paper of general circulation in the city at least one
time 15 days prior to the hearing. Mr. Bob McCann,
Secretary of the Planning Commission, testified that, in
addition to the legal description of the property sought
to be rezoned, the commission also requires that the
street address be given, the commission realizing that
many people would not be able to identify property
simply by the legal description. Certainly, hearings
affecting vital property rights are important, particular-
ly so, when they involve an individual's home, the
place where he contemplates spending the rest of his
life. The Chancellor commented on the request for
continuance as follows:

"Further, it is indicated that there was a request
for a continuance before the Planning Commission, but
that this body which has authority to promulgate its
own rules and regulations for conducting its affairs
(Arkansas Statutes Annotated, *Title* 19-2830) did, within
its discretion, deny the request for continuance. *Had
the matter stopped here, this may have been considered
an indiscretion,*[2] but this body is only an advisory body

---

[1]That the commission performs important functions is recognized by
the fact that in certain instances, the commission's disapproval of a sub-
mitted proposal can only be overruled by a recorded vote of 2/3 of the full
membership of the municipal legislative body that created the commission.
See Sub-section f of Section 19-2827.

[2]Emphasis supplied.

and merely, after denying the request for a continuance and after having heard the evidence presented before it in connection with the rezoning application, did approve and recommend granting the change to the Board of Directors of the City of Fort Smith, which is its primary function."

We have already pointed out that we attach much more importance to this primary hearing than is indicated by the appellees, and the trial court. It certainly appears that the Board of Directors attached importance to the recommendation of the commission, as well they might, and any attorney is aware of the advantage of prevailing in the first engagement. It is no answer to say that appellants could not have been prejudiced because they received a *de novo* hearing before the Chancery Court. Actually, such a hearing is not *de novo,* for the court is only permitted to reverse the city's legislative body if it finds that that body acted arbitrarily. We, in turn, only reverse if the findings of the Chancery Court are against the preponderance of the evidence. *Olsen* v. *City of Little Rock, supra.* Of course, it has been held that this court hears all Chancery cases *de novo. Harris* v. *Harris,* 236 Ark. 676, 370 S. W. 2d 121. But despite that fact, we have held many times that we will not reverse a Chancellor unless his findings are clearly against the preponderance of the evidence, and this is actually the rule that is followed. *Hampton* v. *Hampton,* 245 Ark. 579, 433 S. W. 2d 149.

We have endeavored, in the remarks of the last several paragraphs, to show that a hearing before the Planning Commission is much more than perfunctory, *i. e.,* it is not a mere formality. The next question is: "Did the Planning Commission act arbitrarily in refusing to grant a continuance in order that the Wenderoths might be heard" We think the answer is a solid "yes," and we disagree with Dr. Shermer when he said, "I don't think going to the doctor or going to a dentist is enough reason to excuse a man from being present at a meeting when he's known about it for a month." In the first place, the Wenderoth's had not known

about this hearing for a month. Mr. Wenderoth testified that he received the second notice (advising of the new date) on March 31, or nine days before the hearing. The record reflects that the notice was not sent out until March 28, so he could not have known about it for more than eleven days. This is some three weeks less than a month. Mainly, however, Wenderoth had already been advised that the hearing was set a week later (April 15), and he cannot be blamed for having made arrangements for his wife to receive dental surgery on the 8th—nor do we think it reasonable to require Wenderoth's regular attorney, who had another meeting, to cancel that meeting for the purpose of appearing before the commission. For that matter, an attorney can hardly capably or efficiently handle any matter in the absence of his client.

There is not one line of evidence that Wenderoth prevaricated in stating the reason for his inability to be present, and likewise, there is no reason given for the change of dates for the hearing, other than it appears a mistake was made when the card was sent out advising that the hearing would be held on the 15th. Still, Wenderoth should not be held responsible for someone's mistake in sending the notice. We think the commission acted arbitrarily in refusing to continue the hearing.

As to the second point, we agree that proper notice in conformity with the city requirements was not given, Mr. McCann admitting that the description used in the notice could include several square miles, but under the circumstances herein, this is not grounds for reversal. It is true that several people (not abutting property owners) testified in Chancery Court against the rezoning, stating that they did not know about the hearing before the Planning Commission, and it is entirely probable that, with such knowledge, at least some would have been present for the purpose of being heard. However, these persons are not parties to this litigation, and accordingly are not asking for any re-

lief. Only the Wenderoths are appellants, and they were aware that a hearing would be held.

In accordance with what has been said, we find that the Chancellor's holding that the city did not act arbitrarily is against the preponderance of the evidence, and the decree is accordingly reversed.

It is so ordered.

FOGLEMAN and BYRD, JJ., dissent.

JOHN A. FOGLEMAN, Justice, dissenting. Perhaps the fundamental basis of my disagreement with the majority stems from a difference in concept as to the importance of the role of the Fort Smith City Planning Commission in this matter. After adoption, a zoning plan, which may be recommended by a city planning commission, is effectuated by a zoning ordinance adopted by the city governing board. Ark. Stat. Ann. § 18-2829 (Repl. 1968). Such an ordinance may be altered or amended by the council either with or without the recommendation of the city planning board. Ark. Stat. Ann. §§ 19-2829, -2830 (Repl. 1968). The action of the city council may be appealed to the circuit court of the county wherein the city lies for a trial de novo according to the same procedure which applies to appeals in civil actions. This appeal, like the appeal from a· municipal court or county court, requires a complete new trial as if the city governing board and the planning commission had never acted. Ark. Stat. Ann. § 19-2830.1 (Repl. 1968). *City of Little Rock* v. *Leawood Property Owners Assn.*, 242 Ark. 451, 413 S. W. 2d 877; *Arkansas Power & Light Co.* v. *City of Little Rock*, 243 Ark. 290, 420 S. W. 2d 85; Ark. Stat. Ann. §§ 44-504, -509 (Repl. 1964); Ark. Stat. Ann. §§ 27-2006, -2007 (Repl. 1962); *Pulaski County* v. *Horton*, 224 Ark. 864, 276 S. W. 2d 706; *Gocio* v. *Harkey*, 211 Ark. 410, 200 S. W. 2d 977.

On such a trial de novo, the circuit court tries the cause upon its merits, and determines the same by the

exercise of its own judgment and discretion to the same extent that the agency from which the appeal was taken might have done. *Thornton* v. *Allen,* 101 Ark. 106, 141 S. W. 499; *Stephens* v. *School Dist. No. 85,* 104 Ark. 145, 148 S. W. 504. It is the duty of the circuit court to hear any admissible evidence that either side desires to present. *Garland County Board of Election Commissioners* v. *Ennis,* 227 Ark. 880, 302 S. W. 2d 76. Objections to procedures in the tribunal from which the appeal has been taken are futile and unavailing. *Arkansas Cotton Growers Co-op Assn.* v. *Brown,* 179 Ark. 338, 16 S. W. 2d 177; *Martin* v. *State,* 46 Ark. 38. The circuit court does not pass upon any question as to an erroneous ruling made by the agency from which the appeal is taken. *Stephens* v. *School Dist.,* supra; *Thornton* v. *Allen,* supra; *Batesville* v. *Ball,* 100 Ark. 496, 140 S. W. 712. Irregularities in procedure in the tribunal from which appeal is taken are immaterial, where appellate trial in circuit court is de novo. *Nooks* v. *City of Van Buren,* 206 Ark. xix, 174 S. W. 2d 443; *Mayfield* v. *State,* 160 Ark. 474, 254 S. W. 841; *Simpson* v. *State,* 193 Ark. 623, 101 S. W. 2d 795.[1] Error in the sustaining of a demurrer by a court of limited jurisdiction has been held not to justify remand by the circuit court on appeal, rather than trial of the case on its merits. *Dean* v. *Bush,* 193 Ark. 1179, 97 S. W. 2d 429. We have heretofore called attention to the fact that even denial of constitutional right to counsel is not invaded, where an accused has the right to trial de novo on appeal where he is represented by counsel. *Cableton* v. *State,* 243 Ark. 351, 420 S. W. 2d 534.

Instead of taking their appeal to the circuit court, appellants chose to apply to the chancery court for relief. In their original petition there, appellants alleged that the city's Board of Directors (not the planning commission) abused its discretion in allowing the zoning change. Appellants further stated in this pleading and repeated in an amended petition that *"This petition is in the form of an appeal from the action of*

---

[1]For an application of a virtually identical rule to proceedings of an administrative agency, see *State* v. *Pollock,* 251 Ala. 603, 38 So. 2d 870, 7 A. L. R. 2d 757 (1948).

*the board of Directors. . . ."* (Emphasis mine.) By their amended petition appellants alleged that the abuse of discretion of the board of directors was in granting the zoning change, with knowledge of the improper and arbitrary manner of the hearing conducted by the planning commission, the decrease in value of surrounding property that said grant would cause and the increase in traffic which would endanger children attending Echols School. Appellees answered and the record discloses that appellant Collier Wenderoth and his attorney were present and participating at the meeting at which the rezoning action was taken by the board of directors and were given and availed themselves of an opportunity to present any objections or evidence concerning the matter.

The chancery court proceeded to determine the issue raised by appellants' petition, i. e., whether the action of the City of Fort Smith was arbitrary, unreasonable and an abuse of discretion. In setting out his findings, the chancellor stated that, had the matter stopped with the planning commission action, it might well have been an abuse of discretion, but continued, saying that the commission only recommended the change to the board of directors, and that, at a full and complete hearing by that board, appellants' objections (which were the same as those made in the chancery proceedings) were considered. The court held that appellants had failed to show that the action of the board was arbitrary, unreasonable or in abuse of its discretion. The court then proceeded to make these findings:

"Comment should be made with reference to the traffic conditions and noise, as well as the project itself proposed upon the property concerned. While these complaints are speculative at this stage, testimony pro and con was taken and considered both by the City and this Court. The project proposal concerned would open an avenue not presently opened between Kinkead and Grand Avenue for handling traffic, as well as afford sidewalks not presently existing according to the testimony and

evidence. Further, the proposed apartment complex project would act as a buffer for noise from Interstate No. 540, and there is substantial evidence that one of the highest and best uses of the property sought to be rezoned is the proposed project and that it would not, of itself, devalue the property of the Petitioners or the surrounding area. These matters were all presented to and considered by both the Planning Commission and the City Board of Directors and are supported by substantial if not the preponderance of evidence in this case on trial before the Chancery Court in support of the City's action."

The record discloses that Collier Wenderoth testified at length on the merits of the rezoning. He also presented five witnesses who testified on the merits. No evidence offered by appellants was rejected. One of the owners of the company seeking the rezoning and two real estate experts also testified as to the propriety of the zoning.

Appellants had the opportunity to and did present to the board, the agency having the power to act in the premises, any and all evidence that they could have presented to the planning commission. They could have presented to a circuit court for a de novo determination any and all such evidence and all the evidence presented to the chancery court. They do not seek to show here that the chancery court's review was not broad enough. They merely argue that it erred in holding that the action was not arbitrary.

In the first place, it seems to me that the chancellor was correct when he held that even if the commission's action was an abuse of discretion, appellants had a full and complete hearing by the city's governing board. Furthermore, appellants cannot say that they were prejudiced by their inability to present any objection or evidence to the planning commission, because they had a right to trial de novo in the circuit court. Under these circumstances it seems illogical to

me to say that a procedural error, even if an arbitrary one, can have the effect given it by the majority. If so, it behooves one objecting to planning commission action to bypass his right of hearing before the city governing board and his appeal to the circuit court in favor of an effort to have the city's action held invalid as arbitrary. This does not seem rational to me.

The scope of chancery court review and the limitations on its relief have been clearly defined.[2] A chancery court may declare a zoning ordinance void when, and only when, it can say that the action of the authority having power to zone, is clearly unreasonable, arbitrary and capricious or an abuse of discretion. *Economy Wholesale Co.* v. *Rodgers,* 232 Ark. 835, 340 S. W. 2d 583; *Herring* v. *Stannus,* 169 Ark. 244, 275 S. W. 321; *City of Little Rock* v. *Garner,* 235 Ark. 362, 360 S. W. 2d 116; *Olsen* v. *City of Little Rock,* 241 Ark. 155, 406 S. W. 2d 706; *City of Little Rock* v. *Joyner;* 212 Ark. 508, 206 S. W. 2d 446; *City of Little Rock* v. *Pfeifer,* 169 Ark. 1027, 277 S. W. 883. In the sense used in these cases, we have said that "arbitrary" means "decisive but unreasoned," or "arising from unrestrained exercise of the will, caprice or personal preference, based on random or convenient selection or choice, rather than on reason or nature" and that "capricious" means "not guided by steady judgment or purpose." *City of North Little Rock* v. *Habrle,* 239 Ark. 1007, 395 S. W. 2d 751; *City of Little Rock* v. *Parker,* 241 Ark. 381, 407 S. W. 2d 921.

It is the application of the ordinance to the prop-

---

[2] Arkansas Statutes Annotated § 19-2830.1 (Repl. 1968) certainly does not enlarge the scope of chancery court review, and appellants do not so contend. In spite of the language giving the right of appeal in addition to existing remedies provided by law, it may well be that trial de novo on appeal would deprive the equity court of jurisdiction because of adequacy of the remedy at law, if proper objection was made. See *Rockefeller* v. *Hogue,* (April 21, 1969), 439 S. W. 2d 805; *McGehee* v. *Mid South Gas Co.,* 235 Ark. 50, 357 S. W. 2d 282. Since the chancery court is not wholly incompetent to grant the relief sought by appellants, appellees waived the question by answering without reserving any objection on this ground. *Reid* v. *Karoley,* 232 Ark. 261, 337 S. W. 2d 648.

erty in question that must be unreasonable and arbitrary, not the procedure by which the result was reached. *City of Little Rock* v. *Hunter,* 216 Ark. 916, 228 S. W. 2d 58. I have made an exhaustive search, but have been unable to find any case where any question except the end result of city action, i. e., the classification actually made by the city or its application to the property involved, has been considered as determinative of the validity of the municipal action. I have likewise been unable to find any case where the determination was made by this court upon purely procedural errors which were not jurisdictional. On the other hand, a decree holding that city council zoning action was reasonable was sustained even though there was testimony, apparently by an alderman, that the council members had a "gentleman's agreement" to follow, or vote according to, the recommendation of the councilman from the ward involved on the premise that the alderman in a ward was in close touch with the situation. *McKinney* v. *City of Little Rock,* 201 Ark. 618, 146 S. W. 2d 167.

It has also been held that before the courts will invalidate a zoning ordinance, the property owner must first exhaust his administrative remedies before he can seek equitable relief. *City of Little Rock* v. *Hunter,* supra. While appellants did so in this case, that rule would be meaningless, if the property owner could seek relief from the city governing board and still ask judicial relief because of improper or erroneous action on the part of the planning commission. If a property owner can do this, then the courts should pass upon the planning commission action without first relegating a property owner to his administrative remedies.

Abuse of discretion on the part of the planning commission in refusing the continuance is at least questionable. Appellants had notice of the meeting of the planning commission in ample time that they could see that a representative appeared to seek a continuance of the hearing. Even though the messenger who appeared on this mission was not appellants' regularly

retained attorney, he was the partner of that attorney. The attorney who appeared was unable to state the Wenderoths' objections to the commission. No reason is given for the failure to communicate to him the basis of appellants' objections so that the commission might be apprised of it. Certainly, the commission was entitled to know the basis of the objections being made in order to determine the propriety of the request. It could not even know whether the presence of appellants or their regularly retained attorney was essential to presentation of the objections they were urging.[3] Since it was being called upon by appellants to exercise its discretion to grant a continuance, it was entitled to have adequate information. Any other rule would make conduct of the business of a city planning commission difficult, if not impossible, because few meetings involving such matters of community interest can be scheduled without conflicting with other important appointments of an interested party or attorney.

I see no need to outline the testimony before the trial court. It seems to me that it cannot be said that the chancellor's finding was clearly against the preponderance of the evidence.

BYRD, J., joins in this dissent.

---

[3]The same attorney who appeared before the planning commission also tried this case in the chancery court and argued the case orally here.